UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ASHETON S. MORGAN,

            Plaintiff,            Case No. 2:19-cv-3

v.                                 Honorable Paul L. Maloney

TONY TRIERWEILER et al.,

            Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bauman, Naeyart, Immel, Rapelje, McGee, Washington, Curly, and Lindholm.

**Discussion**

I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan, and the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan.

Plaintiff sues Defendants IBC Warden Tony Trierweiler, LMF Warden Catherine S. Bauman, IBC Deputy Warden John Davids, LMF Resident Unit Manager Joseph Naeyart, IBC Prison Counselor Jared Buchin, and LMF Deputy Warden Anthony Immel. Plaintiff also sues MDOC Assistant Deputy Director Lloyd Rapelje, MDOC Deputy Director Kenneth McGee, MDOC Director Heidi E. Washington, MDOC Assistant Deputy Director Michael Curly, and LMF Chaplain Unknown Lindholm.

Plaintiff alleges that on September 13, 2016, he arrived at IBC, where he informed Defendants Davids, Buchin, and Trierweiler, as well as other prison officials, that because of the unavailability of an Islamic Halal diet at IBC, he was being forced to eat foods which violated his Islamic beliefs. Plaintiff was told that due to his classification to segregation, he would not be receiving a Halal meal. Plaintiff was also told that due to his behavior and classification, he would not be transferred to a facility which could accommodate his religious dietary needs. Plaintiff filed a grievance regarding his diet on September 18, 2016, which was denied at step I on September 30, 2016. In the step I grievance response, a prison official named Hull stated:

> Chaplain Thompson was contacted regarding Mr. Morgan's grievance. Chaplain Thompson confirms that prisoner Morgan is approved for a religious diet. PD 05.03.150 states that all recognized religions enjoy equal status and protection but are subject to those limitations necessary to maintain the safety, good order and

> security of the facility, including the health and safety of prisoners and staff. After being interviewed on this grievance, prisoner Morgan was classified to Administrative Segregation as the result of participating in a disturbance at KCF. PD 04.05.120, V, #8 states a prisoner in segregation shall be provided with three meals per day served from the same menus available to general population prisoners. This includes, as required, meals from the therapeutic diet menu and, if available at that facility, meals from a menu developed to meet the necessary religious dietary restrictions of the prisoner. The religious diet menu is not available at IBC because the facility is not a designated location for the Vegan menu designed to meet the religious dietary needs of prisoners. In accordance with PD 04.05.120, prisoner Morgan will be served meals from the same menus available to general population prisoners while housed in Administrative Segregation at IBC. SCC [Security Classification Committee] will determine prisoner Morgan's release and/or appropriate transfer from IBC's Administrative Segregation Unit with consideration for safety and security concerns.

*See* ECF No. 1, PageID.23. Plaintiff states that Defendant Trierweiler affirmed this denial on October 25, 2016.

Plaintiff alleges that Defendants Davids and Buchin told him that he was to be sent to Ionia Max. Plaintiff responded that he was afraid to be sent to Ionia Max because he had enemies there, but Defendants Davids and Buchin just laughed. Plaintiff was not sent to Ionia Max, but was actually transferred to Kincheloe, and then to LMF.

Plaintiff states that between September 13, 2016, and November 20, 2016, Defendant Trierweiler approved transfers for religious diets, but purposely delayed Plaintiff's request out of a desire to retaliate against Plaintiff. During this time period, Plaintiff endured inhumane denials of a religious diet, due process, and legal material. Plaintiff alleges that he was only permitted to shower once between November 15, 2016, and November 23, 2016. Plaintiff was not given any food on November 21, 2016. On November 22, 2016, Plaintiff was forced to eat food that violated his beliefs because he was starving.

Plaintiff claims that someone named Scott Sprader acknowledged his approval for a Halal diet on November 21, 2016. However, on November 29, 2016, Defendant Naeyart told Plaintiff that he was being starved until verification of his religious diet arrived. Plaintiff did not

3

receive a Halal meal at any time between November 21, 2016, and October 5, 2017. Instead Plaintiff was forced to accept a diet advocated by another faith, such as Judaism or Buddhism. Plaintiff was also denied access to religious services.

Plaintiff attaches a copy of a letter he wrote to Defendant Lindholm on May 11, 2017, asserting the denial of a Halal diet which complied with his religious beliefs. Plaintiff asserted that he was being forced to eat a diet which complied with Buddhist and Jewish religious tenets. *See* ECF No. 1, PageID.41. On May 12, 2017, Defendant Lindholm responded, indicating that Plaintiff had been approved for a religious diet on March 10, 2016, and that the "religious menu served at LMF (and throughout the MDOC) satisfies Kosher/Halal/Vegan requirements." *See* ECF No. 1, PageID.42.

Plaintiff alleges that on May 28, 2017, during the month of Ramadan, he informed LMF staff that food was being delivered too late to be accepted for the fast. Plaintiff explained that he was being forced to choose between sustaining himself or practicing his religious beliefs. Plaintiff received a misconduct ticket because of his complaint. Plaintiff attaches a copy of the misconduct hearing report, which shows that he stuck his arm out of the slot when it was opened by the officer. Plaintiff argued that he was never ordered to remove his arm, so he could not be guilty of disobeying a direct order. Plaintiff was found guilty of the misconduct. *See* ECF No. 1, PageID.39. On June 7, 2017, the shift commander told Plaintiff that he understood his complaints, but he refused to help Plaintiff. When Plaintiff attempted to file a grievance, he was told that he could not grieve issues related to a misconduct ticket.

Plaintiff claims that the treatment he received at IBC and LMF resulted in sleep deprivation, anxiety, chronic headaches, and excessive weight loss. On October 6, 2017, Plaintiff

4

began to receive outpatient treatment for depression and anxiety. However, on September 26, 2018, Plaintiff was denied care at LMF.

Plaintiff states that IBC staff violated his rights under the First Amendment and RLUIPA when they forced Plaintiff to eat food which violated his religious beliefs. Plaintiff claims that LMF staff starved him for 24 hours and then forced him to eat forbidden food, all while making accommodations for other religious groups. Plaintiff states that he was forced to eat from the Jewish / Buddhist diet menu. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

5

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Bauman, Immel, Rapelje, McGee, Washington, and Curly. In fact, Plaintiff does not even mention these individuals in the body of his complaint. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Bauman, Immel, Rapelje, McGee, Washington, and Curly engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff claims that the remaining Defendants violated his rights under the First Amendment and the RLUIPA by denying him a Halal diet which complied with his religious beliefs. While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; *accord Turner v. Safley*, 482 U.S. 78, 89 (1987). First Amendment protection extends to all religious beliefs, and guaranties "religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian faith . . . ."). *County of Allegheny v. ACLU*, 492 U.S. 573, 615 (1989). To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

Likewise, RLUIPA provides in pertinent part that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . ." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a) (1)-(2). RLUIPA's institutionalized-persons provision alleviates government-created burdens on private religious exercise. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

Although RLUIPA does not define "substantial burden," courts apply the traditional substantial burden test, as defined by the Supreme Court's free exercise jurisprudence. *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004) (citations omitted). A "substantial burden" requires something more than an incidental effect on religious exercise. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) (a substantial burden has "a tendency to coerce individuals into acting contrary to their religious beliefs"); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141 (1987) (there is a substantial burden where a regulation puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226-27 (11th Cir. 2004) (a substantial burden must place more than an inconvenience on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (substantial burden is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable").

Plaintiff fails to allege facts demonstrating that the actions of Defendant Naeyart placed a substantial burden on his ability to practice his Islamic faith. Plaintiff alleges that on November 29, 2016, Defendant Naeyart told him that prison staff were going to "starve" him until his religious diet could be verified. However, Plaintiff also alleges that he was being given meals from the vegan diet menu during this time period. Plaintiff claims that the vegan diet was not Halal, but as stated by Defendant Chaplain Lindholm in his May 12, 2017, response to Plaintiff's letter, the religious menu provided by the MDOC satisfies Kosher, Halal, and Vegan requirements. Therefore, it does not appear that Defendant Naeyart took any action which resulted in a substantial burden on Plaintiff's ability to practice his religion.

Nor does Plaintiff allege facts showing that Defendant Lindholm violated Plaintiff's right to practice his religion. As noted above, Defendant Lindholm responded to a letter written by Plaintiff, which asserted that he was being denied a diet that complied with the tenets of his religious beliefs. In the response, Defendant Lindholm explained that the diet that Plaintiff was receiving complied with the requirements of Kosher, Halal, and Vegan diets. Therefore, Plaintiff's First Amendment and RLUIPA claims against Defendants Naeyart and Lindholm are properly dismissed.

Plaintiff claims that Defendants Trierweiler, Davids, and Buchin prevented him from receiving a Halal diet between September 13, 2016, and November 21, 2016. The Court concludes that Plaintiff's First Amendment and RLUIPA claims against Defendants Trierweiler, Davids, and Buchin are not clearly frivolous and may not be dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bauman, Naeyart, Immel, Rapelje, McGee, Washington, Curly, and Lindholm will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment and RLUIPA claims against Defendants Trierweiler, Davids, and Buchin remain in the case.

An order consistent with this opinion will be entered.


Dated: May 14, 2019                     /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge